632 A.2d 956

**Richard BIAGINI, Petitioner,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (MERIT CONTRACTING COMPANY), Respondent.**

Commonwealth Court of Pennsylvania.

Argued March 5, 1993.

Decided Oct. 5, 1993.

Jerome P. Grossi, for petitioner.

Edward K. Dixon, for appellee.

Before SMITH and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Richard Biagini (Claimant) appeals from the order of the Workmen's Compensation Appeal Board (Board) which affirmed the referee's order dismissing Claimant's claim petition. Two issues have been raised for our review in this appeal, namely, whether Claimant was denied due process when a referee, other than the referee who presided at the hearings, issued a decision and order in this matter prior to Claimant receiving notification of said substitution; and whether Claimant was acting within the scope of his employment when he was injured. We will address the facts and arguments as to each of these issues separately.

*Claimant's Due Process claim*

This case was assigned to referee Frank C. Roney on January 7, 1991. The first of three hearings began in the matter on February 5, 1991. Referee Kathleen Vallely presided at the initial hearing and the two subsequent hearings held on February 12, 1991 and February 25, 1991. At the conclu-

sion of all the hearings, on May 28, 1991, Referee Roney issued the decision and order at issue herein.

Claimant argues that it was a violation of his due process rights when Referee Roney, rather than Referee Vallely, issued the decision and order in this matter because, Claimant maintains, Referee Vallely had an opportunity to observe the live witnesses who testified at the hearings and thus had a greater opportunity to assess witness credibility. Additionally, Claimant asserts that because he was not given notice of the fact, prior to a decision being rendered, that Referee Roney, rather than Referee Vallely, would be issuing the decision and order, he was deprived of his due process rights as he was not afforded an opportunity to object to said substitution.

Initially, we note that the practice of one tribunal assessing credibility and rendering a decision where another tribunal has received the actual testimony is nothing new in the law. To the contrary, in unemployment compensation cases it is the referee that conducts evidentiary hearings, while the Unemployment Compensation Board of Review is the ultimate factfinder and issues findings of fact and conclusions of law. In the case of *Peak v. Unemployment Compensation Board of Review*, 509 Pa. 267, 501 A.2d 1383 (1985), our Supreme Court discussed this practice where a due process challenge was asserted. The Court stated:

It may be wiser, more efficient or more expedient to entrust administrative determinations of fact based on credibility to the person who hears the evidence. However, that judgment is one for the legislature, not the judiciary.... [T]he notion that credibility evaluations depend on the observation of live witnesses while they testify ... is often important, but it is not the only factor to be considered in deciding who is to evaluate credibility on conflicting evidence. Considerations of expertise, uniformity of decision and control over policy are also relevant. Besides, a rule embodying that proposition would preclude a factfinder from weighing depositions against live evidence, or documents or exhibits against witness's testimony, a practice

common and necessary in both administrative and judicial fact finding. We decline to adopt such a rule.

*Peak,* 509 Pa. at 278–279, 501 A.2d at 1389–1390.

Section 415 of the Pennsylvania Workmen's Compensation Act[1] specifically authorizes the Bureau of Worker's Compensation to substitute one referee for another in a workmen's compensation proceeding. Section 415 provides:

**Transfer of petition to another referee**

At any time before an award or disallowance of compensation or order has been made by a referee to whom a petition has been assigned, the department may order such petition heard before any other referee. Unless the department shall otherwise order, the testimony taken before the original referee shall be considered as though taken before the substituted referee.

The Supreme Court, in the case of *Arena v. Packaging Systems Corp.,* 510 Pa. 34, 507 A.2d 18 (1986), upheld the substitution of a referee, other than the referee who received the testimony in the case, reasoning that "the referee, as well as the Board, deals exclusively with workmen's compensation cases and has developed expertise in the area." *Arena,* 510 Pa. at 35 n. 2, 507 A.2d at 19 n. 2.

■ Although Claimant does not specifically assert a constitutional challenge to the Bureau's authority pursuant to Section 415, Claimant maintains that here his constitutional rights were violated because he was not notified of the substitution of one referee for another prior to a decision being rendered. Claimant asserts that because he was not provided prior notification, he was deprived of an opportunity to make objections to the substitution. However, a review of the record demonstrates that Claimant first became aware of the substitution when he received the referee's decision. This being the case, Claimant, in his appeal to the Board, in addition to alleging errors regarding the referee's findings of fact and conclusions of law, specifically raised before the Board the

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 851.

matter of the Bureau's substitution of one referee for another. Claimant asserted the following:

> The case should have been decided by Referee Vallely, not Referee Roney. The entire case was heard by Referee Vallely. Referee Roney never saw the claimant. The parties agreed that Referee Vallely would decide the case. (R.R. 73a).

The forgoing, however, is merely a statement of what transpired. The Claimant did not, in his appeal to the Board, set forth any constitutional, statutory or regulatory violations as a result of the Bureau's substitution of one referee for another.[2] Claimant clearly had an "opportunity" to note any objections to the Bureau's substitution of one referee for another in his appeal to the Board which he failed to do.

Likewise, Claimant, in his appeal to this Court, although engaging in an academic exposition on entitlement to due process, fails to delineate in what manner his due process rights have been diminished by the substitution. All Claimant notes to this Court is the mere lack of opportunity to raise objections without indicating what specific objections he would have raised. Stated another way, Claimant has failed to assert that the result would have been different absent the substitution.

It is not our function as an appellate court to decide questions in the abstract. Our function is to examine actual issues and controversies and determine their merit. *See In re Condemnation by Commonwealth Department of Transportation,* 100 Pa.Commonwealth Ct. 546, 515 A.2d 102 (1986); *see also Commonwealth v. County of Bucks,* 8 Pa.Commonwealth Ct. 295, 302 A.2d 897 (1973).

Claimant has failed to demonstrate what due process rights of his have been violated and the effect thereof.

**2.** Ordinarily were there is a substitution of one referee for another, the usual objection, among others, is that the substituted referee has a bias or prejudice as to one of the parties which may entitle said party to a recusal of the referee. Here, significantly, even this most obvious objection was not asserted.

*Claimant's claim petition*

Claimant was employed by Merit Contracting Company (Employer) as a working foreman. On April 12, 1990, while driving to a job site, Claimant was involved in an automobile accident. On December 13, 1990, Claimant filed a claim petition, alleging that on April 12, 1990 he sustained work-related injuries in the nature of "a serious head injury (depressed skull fracture) in a coma for weeks—with two (2) collapsed lungs—broken leg." (R.R. 2a). Employer filed a timely answer denying the allegations contained in the claim petition.

The sole question before the referee was whether Claimant was within the scope of employment when his injuries occurred. Specifically, Claimant argued that he fell within the exceptions to the general rule that injuries sustained by an employee while traveling to and from work are not considered to have occurred while in the scope and course of employment. *Setley v. Workmen's Compensation Appeal Board,* 69 Pa.Commonwealth Ct. 241, 451 A.2d 10 (1982).[3]

In support of his petition, Claimant presented his own testimony and that of his wife. Claimant's wife testified that at the time Claimant was injured he was on assignment at a job site in Morgantown, West Virginia. She stated that Claimant used his own truck to drive to and from work and that Employer provided him a credit card to purchase gas for the truck. However, Claimant's wife was unable to testify as to whether Claimant was permitted to use the credit card to purchase gas for Claimant's travel to and from work, or whether Claimant was limited to using the card for gas used at his job site. Claimant also testified that he was provided a

3. The four exceptions to the general "coming and going" rule are as follows:
   (1) Claimant's employment contract includes transportation to and from work;
   (2) Claimant has no fixed place of work;
   (3) Claimant is on a special mission for employer; or
   (4) Special circumstances are such that claimant was furthering the business of the employer.
   *Rittner,* 76 Pa.Commonwealth Ct. at 60, 464 A.2d at 678.

credit card from Employer in order to purchase gas and oil for his truck. Claimant, however, failed to testify as to whether he was authorized to purchase gas for his travel to and from work.

Employer presented the testimony of Clem Gigliotti, Employer's president. He testified that Claimant worked on the Morgantown job site for approximately four months. He explained that when a foreman is assigned a work site he remains at the site until the project is completed. Gigliotti also explained that Employer implemented a program whereby salaried employee's, such as Claimant, were given the option of using their own truck at a job site to haul materials. If the employee did use their own truck, they would be paid $5.00 a day for the truck's use. Additionally, Gigliotti explained that employees who participated in the program were given a credit card to purchase gas, but that the card was to be used only to purchase gas used at the job site. Gigliotti further stated that no employee was required to provide the use of a truck.

Based upon the testimony presented in the matter, the referee made the following relevant findings:

5. Claimant and the defendant had no written or oral contract that provided for claimant's transportation to and from work. Defendant's president testified that "when all the men are hired, they are hired with the understanding that when they get to the job, they start work."

6. There were occasions when claimant would drive his own truck to a job site and claimant's truck would be used for hauling material at the job site. On such occasions, claimant was paid $5.00 for the use of his truck. Claimant was not required by the defendant to use his truck or even to have a truck. According to the testimony of defendant's president, the choice of whether to bring a truck to the job site was entirely claimant's and that other "management people who don't even have trucks, the ownership or possession of a truck is not a requirement or prerequisite, you are given management because you are good at what you do."

7. With respect to a gas credit card which was issued by defendant to the claimant defendant's president testified and your Referee finds that the credit card was to be used to purchase gas and oil for the same while used at the job site and was not intended to be used to pay for gas and oil used while traveling to and from work. Claimant did not testify that he used the credit card for gas used traveling to and from the job site.

8. Before claimant's accident, he had driven to the same job site each working day for four months. There is no evidence of record that the claimant was required to leave this job site once he arrived there each work day. Your Referee finds defendant's job site in Morgantown, West Virginia as a fixed place of work for the claimant.

9. Claimant was not on a special mission for the defendant on the date of his accident and he was not furthering the business of the defendant at the said time.

(R.R. 78a–79a).

The referee, therefore, concluded that Claimant was not within the scope of his employment at the time of the accident and dismissed his claim petition.

On appeal, Claimant maintains that the referee erred in determining that he was not within the scope of his employment at the time of his injury. We disagree.

■ Our scope of review is to determine whether constitutional rights were violated, whether the findings of fact are supported by substantial evidence and whether errors of law have been committed. *Berks County Home v. Workmen's Compensation Appeal Board (Schnable)*, 145 Pa.Commonwealth Ct. 582, 604 A.2d 767 (1992). Whether a claimant was within the course and scope of his employment at the time of injury is a question of law to be determined on the basis of the findings of fact. *Rittner v. Workmen's Compensation Appeal Board (Rittner)*, 76 Pa.Commonwealth Ct. 596, 464 A.2d 675 (1983).

It is clear that the referee based his findings on Employer's witness Clem Gigliotti. Our review of the record reveals that

based upon Gigliotti's testimony, the referee's findings were supported by substantial evidence. Additionally, we conclude that the findings, being supported by substantial evidence, sustain the referee's conclusion that claimant was not within the scope of his employment at the time of his injury. Accordingly, we will affirm the Board's order.

## ORDER

AND NOW, this 5th day of October, 1993, the order of the Workmen's Compensation Appeal Board dated April 29, 1992 is affirmed.

SMITH, Judge, dissenting.

I dissent from the Majority's holding that Claimant failed to demonstrate his due process rights were violated in this case. This Court has consistently recognized the principle that the constitutional guarantee of due process of law applies equally to administrative agency proceedings, *Begis v. Industrial Board of the Department of Labor and Industry,* 9 Pa.Commonwealth Ct. 558, 308 A.2d 643 (1973), and further that due process also includes the requirement that a litigant know how the proceedings will be conducted. *See Department of Health v. Brownsville Golden Age Nursing Home, Inc.,* 103 Pa.Commonwealth Ct. 449, 520 A.2d 926 (1987).

I find nothing more persuasive than the proposition that a claimant shall possess the right to have his or her case decided by the factfinding referee in a workers' compensation proceeding where no compelling or justifiable reason exists for the Bureau of Workers' Compensation to substitute that referee for another referee to render the decision.[1] Likewise, I strongly disagree with the Majority's reference to and reliance upon unemployment compensation case law, where the Board

1. In an order dated September 28, 1992, this Court invited the Workmen's Compensation Appeal Board and the Bureau of Workers' Compensation to file briefs addressing the practice and procedure concerning substitution of referees. Only the Bureau filed a brief in this matter. (At no stage of the appeals process has the Board or Bureau sought to supplement the record or to explain that a compelling or justifiable reason necessitated replacement of the factfinding referee.)

is the ultimate factfinder, to support the Majority's view since it is the referee in workers' compensation proceedings, and not the Board, who serves as the ultimate factfinder vested with sole authority and power to make credibility determinations, to weigh the evidence, and to make findings of fact and conclusions of law. Moreover, this is not a case as the Majority writes where one tribunal assesses credibility and renders a decision whereas another tribunal has received the actual testimony. This practice has no place in workers' compensation law.

## I.

Referee Kathleen Vallely presided at all of the scheduled hearings in this matter on February 5, February 25, and April 2, 1991 where the sole issue to be decided was whether Claimant was injured during the course of his employment. On April 2, 1991, Referee Vallely closed the record and thereafter requested briefs from counsel for her review. On May 30, 1991, however, it was Referee Roney who issued a decision dismissing Claimant's claim petition, finding Employer's witnesses' testimony more credible than that of Claimant's witnesses and concluding that Claimant did not have a contract for transportation to and from work, had a fixed place of work at the job site where he worked for four months preceding the accident, and was not furthering Employer's interest at the time of the injury.

Claimant validly argues that he was denied his due process rights to a fair hearing because he was not given notice of Referee Vallely's replacement or an opportunity to object prior to entry of the decision by Referee Roney and because there was no compelling or justifiable reason to substitute the factfinding referee.[2] The Board rejected Claimant's challenge, concluding that previous decisions of this Court have approved

2. The precise issue presented has not been directly confronted by this Court; thus, where Pennsylvania law affords little or no authority as to the issue in question, the law of other jurisdictions, although not binding on this Court, may be considered as guidance. *Marchione v. Unemployment Compensation Board of Review*, 57 Pa.Commonwealth Ct. 439, 426 A.2d 735 (1981).

the use of substitute referees pursuant to Section 415 of The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 851. Section 415 provides:

**Transfer of petition to another referee**

At any time before an award or disallowance of compensation or order has been made by a referee to whom a petition has been assigned, the department may order such petition heard before any other referee. Unless the department shall otherwise order, the testimony taken before the original referee shall be considered as though taken before the substituted referee.

Section 504 of the Administrative Agency Law, 2 Pa.C.S. § 504, provides that "no adjudication of a Commonwealth agency shall be valid as to any party unless he shall have been afforded reasonable notice of hearing and an opportunity to be heard." Furthermore, in an administrative proceeding, the broadest dimensions of constitutional protection must be provided to the factfinding process. *Roche v. State Board of Funeral Directors,* 63 Pa.Commonwealth Ct. 128, 437 A.2d 797 (1981). Here, the Bureau failed to explain the reason for replacing Referee Vallely after the close of the record and instead merely asserts to this Court that although the record fails to indicate why Referee Roney was unavailable to hear the case, it was necessary for Referee Vallely to preside at the hearings "to keep the case moving" and that the Bureau has absolute discretion to reassign cases at any time under Section 415.

The United States Supreme Court has stated that, "[t]he requirement of a 'full hearing' has obvious reference to the tradition of judicial proceedings in which evidence is received and weighed by the trier of the facts." Further, the hearing, in an administrative proceeding, should afford the safeguard, among others, that the one who decides shall be bound in good conscience to consider the evidence and to arrive at conclusions uninfluenced by extraneous considerations. *Morgan v. United States,* 298 U.S. 468, 480, 56 S.Ct. 906, 911, 80 L.Ed. 1288 (1936). Therefore, generally, "[t]he one who decides

must hear." *Id.* at 481, 56 S.Ct. at 912. Due process however does not require that in all administrative proceedings the actual determinations be made by the person hearing the evidence. *Morgan; Utica Mutual Ins. Co. v. Vincent,* 375 F.2d 129 (2d Cir.1967), *cert. denied,* 389 U.S. 839, 88 S.Ct. 63, 19 L.Ed.2d 102 (1967). *See also* Majority Opinion, page 957, referencing unemployment compensation law and citing *Peak v. Unemployment Compensation Board of Review,* 509 Pa. 267, 501 A.2d 1383 (1985).

Moreover, the general principle that a witness shall be seen and heard by the decider of facts is such an important one that it should not be lightly abandoned. *Smith v. State,* 214 N.Y. 140, 143, 108 N.E. 214, 215 (1915). Further, considerations of administrative efficiency and convenience must not be allowed to devour one's due process rights to a fair and meaningful agency determination. *Wampler v. Review Board of Indiana Employment Security Div.,* 498 N.E.2d 998 (Ind. Ct.App.1986).

Due to the Bureau's failure to give notice of Referee Vallely's substitution before the decision, Claimant was precluded from raising any objections and presenting any procedural requests which may have been necessitated prior to entry of the referee's decision. The failure of Claimant to specify precisely what objections he would have raised had he been given prior notice in no manner defeats his entitlement to due process in the initial proceedings before the referee as the Majority implies, or to challenge on appeal the legality of the procedures followed. In *Bogowich v. State Workmen's Ins. Fund,* 105 Pa.Superior Ct. 366, 161 A. 623 (1932), the Superior Court held that since no objection was made to the rendering of an adjudication by the substitute referee, no question of law as to the legality of the procedure was raised. In *Wilder v. Jones & Laughlin Steel Corp.,* 8 Pa. Commonwealth Ct. 505, 303 A.2d 537 (1973), this Court adopted the observations made by the court in *Bogowich,* stating that:

> We do not discover anything in the record indicating that any objection was made when, upon the incapacitation of Referee Jones, the case was referred for adjudication to

Referee Baldrige; nor any question raised before the Board as to the regularity of the proceedings before the latter referee; nor any request made to him that he call any of the witnesses before him, in order that he might see and hear them; nor any request to the Board for a hearing de novo. The appeal, then, appears to us to raise no question of law as to regularity of the procedure. *Appellant should not be heard to complain of a matter of practice to which he made no objection until after the award was made.* (Emphasis added.)

*Id.* at 510, 303 A.2d at 540.

It becomes apparent from the court's observations that a claimant cannot object prior to a substitution unless that claimant is given prior notice of the substitution. Nevertheless, this Court has held that an objection to factual findings made by a substitute referee must be timely raised to preserve the issue. *Wilder.* Here, the Bureau's lack of notice of substitution precluded Claimant from making a timely objection. Consequently, any practice short of notice of substitution of the factfinding referee and an opportunity to object affords a claimant less than a full and fair opportunity to be heard and to know as well how the proceeding will be conducted.[3]

## II.

The Bureau maintains that the procedures employed in this case were consistent with established precedent which has

3. When reassignment of a case is agreed to by the Bureau, the parties and the referee, the Bureau is required to give notice of reassignment to all the parties pursuant to 34 Pa.Code § 131.22(a). The Bureau argues that it was not required to give notice of reassignment in this case because the Bureau never formally reassigned the case to Referee Vallely and there was no agreement of reassignment. However, if the Bureau is required to give notice of reassignment upon agreement, it logically follows that the Bureau must give notice in cases of unilateral reassignment or substitution to provide an opportunity to object, most notably in instances where ethical or procedural concerns may be raised. Also, this Court attaches little significance to the Bureau's contention that Claimant's failure to object to Referee Vallely presiding over the hearings somehow diminishes Claimant's position.

upheld the Bureau's authority to substitute referees. In *Arena v. Packaging Systems Corp.*, 510 Pa. 34, 507 A.2d 18 (1986), the Pennsylvania Supreme Court held that where the substitute referee assigned to render a decision due to retirement of the first referee did not have an opportunity to observe the witnesses, the same deference should be given to his findings, even though the substitution may have removed the first reason for giving deference to the factfinding referee which is that the one who observes the witnesses is in the best position to rule on the credibility of those witnesses.

Claimant's challenge though is not to the Bureau's authority under Section 415 to substitute a referee or the deference to be given that referee; rather, it is to the Bureau's implementation of Section 415 in cases where the factfinding referee is substituted prior to decision where there is no compelling or justifiable reason for the substitution.[4] Although Section 415 does not expressly restrict the Bureau's authority to substitute a factfinding referee only in cases of compelling or justifiable reasons, such restriction may be implied. Recognizing a basic principle of statutory construction, this Court must presume that the legislature did not intend to violate constitutional protections in enacting a statute. Section 1922(3) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(3).

In all prior decisions by courts of this Commonwealth where substitute referees' findings were challenged on the same or similar grounds presented here, the causes for referee substi-

---

**4.** The concerns raised by Claimant are reflected in enactment of Section 554(d) of the Federal Administrative Procedure Act, 5 U.S.C. § 554(d), which provides that "[t]he employee who presides at the reception of evidence ... shall make the recommended decision or initial decision ... unless he becomes *unavailable* to the agency." (Emphasis added.) Section 554(d) is instructive in interpreting Section 415 of the Act.

Section 554(d) has been interpreted to allow an agency, once the examiner who presided at the hearings becomes unavailable, to dispense with a de novo hearing of testimony before the new examiner only when demeanor evidence is unnecessary or of little consequence in deciding the case. *See Millar v. Federal Communications Comm'n*, 707 F.2d 1530 (D.C.Cir.1983); *Van Teslaar v. Bender*, 365 F.Supp. 1007 (D.Md.1973).

tutions included referee resignation, death, retirement, incapacitation, recusal for ethical reasons or other compelling or justifiable grounds. *See, e.g., McAfee v. Workmen's Compensation Appeal Board (Allegheny General Hosp.)*, 134 Pa.Commonwealth Ct. 562, 579 A.2d 1363 (1990) (referee substitution due to emergency created by workload increase); *Ogden v. Workmen's Compensation Appeal Board (Carolina Freight Carriers Corp.)*, 127 Pa.Commonwealth Ct. 286, 561 A.2d 837 (1989), *appeal denied*, 524 Pa. 635, 574 A.2d 75 (1990) (referee death); *A & P Tea Co. v. Workmen's Compensation Appeal Board (Giglio)*, 114 Pa.Commonwealth Ct. 507, 539 A.2d 51 (1988) (referee substitution upon remand due to referee reassignment to another county); *Rockwood Area School Dist. v. Workmen's Compensation Appeal Board (Tipton)*, 98 Pa.Commonwealth Ct. 309, 511 A.2d 263 (1986), *appeal denied*, 515 Pa. 596, 528 A.2d 604, 605 (1987) (referee death); *Thomas v. Workmen's Compensation Appeal Board (State Farm Ins. Cos.)*, 78 Pa.Commonwealth Ct. 274, 467 A.2d 430 (1983) (referee reassignment upon remand due to ethical concerns); *King Kup–Schoener Candies, Inc. v. Workmen's Compensation Appeal Board*, 10 Pa.Commonwealth Ct. 351, 310 A.2d 717 (1973) (referee resignation); *Wilder* (referee death); *Duquesne Brewing Co. v. Dyda*, 8 Pa.Commonwealth Ct. 531, 303 A.2d 541 (1973) (referee resignation); *Bogowich* (referee incapacitation). Substitution was upheld in these cases either because the issue was waived or due to referee deference.

In all reported cases analyzed, the record demonstrated that a compelling or justifiable event or circumstance occurred which triggered reassignment or substitution. The record in the matter sub judice is devoid of any event or circumstance which justifies the replacement of Referee Vallely who conducted all three of the hearings held in this case, observed the witnesses' demeanor, and was in the best position to rule on the credibility of those witnesses. As indicated, in workers' compensation cases, the referee is the ultimate factfinder with sole power to make credibility determinations and to weigh the evidence and is also empowered to reject one witness' testimony over that of another. *Kraemer v. Workmen's Com-*

*pensation Appeal Board (Perkiomen Valley School Dist.),* 82 Pa.Commonwealth Ct. 469, 474 A.2d 1236 (1984).

Thus this Court should hold that the Bureau abuses the discretion granted to it by Section 415 when, under the specific circumstances presented in the matter sub judice, the Bureau without notice to the parties and an opportunity to object substitutes the factfinding referee with another referee to render the decision where no compelling or justifiable reason exists to replace the factfinding referee.[5] Anything less results in the denial of Claimant's due process rights to a full and fair hearing. Accordingly, the Board's order should be vacated and this matter remanded to the Board to direct Referee Vallely to make necessary factual findings and to issue a new decision consistent with those findings.

---

5. The Pennsylvania Supreme Court has defined an abuse of discretion as follows: "not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or *the judgment exercised is manifestly unreasonable,* or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record, discretion is abused." *Hainsey v. Pennsylvania Liquor Control Board,* 529 Pa. 286, 297, 602 A.2d 1300, 1305 (1992) (emphasis in original).